IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| LARRY WHITE, | ) | |
| --- | --- | --- |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION |
| v. | ) | |
| | ) | No. 09-3245 KHV |
| KANSAS DEPARTMENT OF | ) | |
| CORRECTIONS, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM AND ORDER

Plaintiff Larry White, a former inmate in the custody of the Kansas Department of Corrections ("KDOC") at Lansing Correctional Facility, brings suit pro se against KDOC, several KDOC officials and Nurse John Lewis in their individual and official capacities. Plaintiff seeks to recover damages for constitutionally inadequate medical care under 42 U.S.C. § 1983[1] and for retaliation under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 et seq. This matter comes before the Court on the unopposed Motion To Dismiss, Or In The Alternative, Motion For Summary Judgment And Memorandum In Support (Doc. #23), which Lewis filed June 6, 2010.[2] Defendant moves to dismiss plaintiff's complaint for failure to state a claim upon which relief may be granted, Fed. R. Civ. P. 12(b)(6), and lack of subject matter jurisdiction, Fed. R. Civ. P. 12(b)(1).

D. Kan. Rules 7.1(c) and 6.1(d) require a party opposing a motion to dismiss to file and serve

---

[1] Plaintiff does not expressly bring his claim for constitutionally inadequate medical care under 42 U.S.C. § 1983, but defendant and the Court assume that plaintiff intended to assert it under Section 1983.

[2] Defendant's motion refers to matters contained in a Martinez report, but such matters do not appear in plaintiff's complaint. See Martinez v. Aaron, 570 F.2d 317, 319 (10th Cir.1978). The Court treats defendants motion as a motion to dismiss rather than a motion for summary judgment and does not consider such material. Rule 12(d), Fed. R. Civ. P.

a responsive brief or memorandum within 21 days of being served with the motion. Failure to file a responsive brief or memorandum within 21 days "waives the right to later file such brief or memorandum," except upon a showing of excusable neglect. D. Kan. Rule 7.4(b). Ordinarily, the Court will grant the motion as uncontested. Id. Here, defendant filed his motion to dismiss on June 1, 2010. Doc. #23. Plaintiff did not respond within 21 days, and has yet to respond. For this reason and for the reasons set forth below, the Court sustains defendant's motion to dismiss.

## **Legal Standard**

In ruling on defendant's motion to dismiss for failure to state a claim under Rule 12(b)(6), Fed. R. Civ. P., the Court assumes as true all well pleaded factual allegations and determines whether they plausibly give rise to an entitlement of relief. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009). Because plaintiff proceeds pro se, the Court construes his complaint liberally and holds it to a less stringent standard than formal pleadings drafted by lawyers. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991). The Court does not, however, assume the role of advocate for a pro se litigant. See id. To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim which is plausible and not merely conceivable on its face. Iqbal, 129 S. Ct. at 1950; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In determining whether a complaint states a plausible claim for relief, the Court draws on its judicial experience and common sense. Iqbal, 129 S. Ct. at 1950.

The Court need not accept as true those allegations which state only legal conclusions. See id.; Hall, 935 F.2d at 1110. Plaintiff bears the burden to frame his complaint with enough factual matter to suggest that he is entitled to relief; it is not enough for him to make threadbare recitals of a cause of action accompanied by mere conclusory statements. Twombly, 550 U.S. at 556. Plaintiffs make a facially plausible claim when they plead factual content from which the Court can reasonably infer that

the defendant is liable for the misconduct alleged. Iqbal, 129 S. Ct. at 1949. This requires plaintiff to show more than a sheer possibility that a defendant has acted unlawfully; it is not enough to plead facts that are "merely consistent" with liability. Id. (citing Twombly, 550 U.S. at 557). A pleading that offers labels and conclusions, a formulaic recitation of the elements of a cause of action, or naked assertions devoid of further factual enhancement will not stand. Id. Similarly, where the well pleaded facts do not permit the Court to infer more than the mere possibility of misconduct, the complaint has alleged but not "shown" that the pleader is entitled to relief. Id. at 1950.

**Factual Background**

Plaintiff alleges the following facts, which the Court assumes as true for purposes of this order:

During all relevant times, plaintiff was incarcerated at the Kansas Department of Corrections' Lansing Correctional Facility ("LCF"). See Civil Complaint (Doc. #1) ¶ 2; id. at 8.[3] Lewis is a nurse for the LCF medical care provider, Correct Care Solutions ("CCS"). Beginning in January of 2009, plaintiff began experiencing numbness in his legs and lower back, which impaired his ability to walk. Id. at 4. On April 23, 2009, Lewis treated plaintiff at the LCF clinic because plaintiff's "legs would not support [his] body weight." Doc. #1 at 4, 11, 20. During plaintiff's clinic visit, Lewis commented on an ADA claim that plaintiff had brought against CCS and two CCS doctors. Lewis also declined to give plaintiff a wheelchair and stated that plaintiff's inability to walk was "not his problem." Id. at 5. As plaintiff left the treatment room, defendant "attacked" plaintiff and threw him into the office wall because plaintiff had opposed defendant's "discriminating behavior." Id.

The following day, April 24, 2009, Dr. John Satchell treated plaintiff and prescribed a wheelchair and a wheelchair-accessible cell. Id. at 6. LCF gave plaintiff a wheelchair but did not

---

[3] Plaintiff is not presently in custody. See Order (Doc. #7) at 2.

provide plaintiff a handicap accessible cell. See id. at 6, 45.

## Analysis

**I.      42 U.S.C. § 1983 Claim**

Plaintiff alleges that defendant violated his constitutional rights by providing "constitutionally inadequate medical treatment" under 42 U.S.C. § 1983. Id. at 4. Defendant asserts that he is entitled to dismissal because plaintiff cannot show that he acted with deliberate indifference to a serious medical need. Doc. #23 at 10.

To survive a motion to dismiss a Section 1983 claim, plaintiff must plausibly allege that defendant deprived him of a constitutional right and that in doing so, defendant acted under color of state law. Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970). The Eighth Amendment prohibits infliction of "cruel and unusual punishments," which include "'acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.'" Callahan v. Poppell, 471 F.3d 1155, 1159 (10th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)). A medical need is "serious" if a physician has diagnosed it as requiring treatment or if it is so obvious that even a lay person would easily recognize the need for a doctor's attention. Sealock v. Colorado, 218 F.3d 1205, 1209 (10th Cir. 2000). Indications that a prisoner has a "serious" need for medical treatment include the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; and the existence of chronic and substantial pain. Riddle v. Mondragon, 83 F.3d 1197, 1202 (10th Cir. 1996) (quoting McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992)).

"Deliberate indifference" includes both an objective and a subjective component. Sealock, 218 F.3d at 1209. The objective component requires that the deprivation be "sufficiently

serious." Id. (citing Farmer v. Brennan, 511 U.S. 825, 834 (1994)). In other words, "a prison official's act or omission must result in the denial of the 'minimal civilized measure of life's necessities.'" Farmer, 511 U.S. at 834 (citing Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). The subjective component requires that a prison official knows of and disregards an excessive risk to inmate health or safety, Riddle v. Mondragon, 83 F.3d 1197, 1202 (10th Cir. 1996), by failing to take reasonable measures to abate it, Callahan, 471 F.3d at 1159. For a claim based on a failure to provide medical treatment, such as plaintiff's claim in this case, the prisoner must allege that the denial of medical care caused unnecessary pain and suffering. See Estelle, 429 U.S. at 103. Under these standards, delay in providing medical care may constitute a violation of the Eighth Amendment, but delays that courts have found to violate the Eighth Amendment have frequently involved life-threatening situations and instances in which it is apparent that delay would exacerbate the prisoner's medical problems. Hunt v. Uphoff, 199 F.3d 1220, 1224 (10th Cir. 1999) (quoting Grant v. Bernalillo County Det. Ctr., 173 F.3d 863, 1999 WL 157415 at *2 (10th Cir. 1999) (unpublished disposition)).

Defendant asserts that plaintiff's condition does not rise to the level of a "serious medical need" and that plaintiff does not allege a "sufficiently serious" deprivation or that defendant knowingly disregarded an excessive risk to plaintiff's health or safety. Doc. #23 at 5, 9. Plaintiff asserts that he went to the LCF clinic on April 23, 2009, because his legs would not support his body weight. Doc. #1 at 4. He asserts that this weakness was the culmination of "pelvic and leg numbness" he began to experience in January of 2009, which impeded his ability to walk. Id. Defendant asserts that plaintiff's medical need on April 23, 2009, was not "serious" because plaintiff "made nothing more than vague, nonspecific, non-anatomical complaints that are suggestive of the presence of 'secondary gain.'" Doc. #23 at 5. The Court need not resolve whether plaintiff's medical need was "serious" enough to form

the basis of an Eighth Amendment claim, however, because plaintiff has failed to assert objective or subjective deliberate indifference that amounts to the "unnecessary and wanton infliction of pain" required to state an Eighth Amendment claim. See Estelle, 429 U.S. at 104.

The objective component of the deliberate indifference standard requires a "sufficiently serious" deprivation that "result[s] in the denial of the 'minimal civilized measure of life's necessities.'" Farmer, 511 U.S. at 834 (quoting Rhodes, 452 U.S. at 347). Plaintiff alleges that defendant did not perform any medical tests on plaintiff, stated that plaintiff's "inability to walk was not his problem," and declined to give plaintiff a wheelchair. Plaintiff acknowledges, however, that the following day, Dr. Satchell treated plaintiff and prescribed him a wheelchair. Doc. #1 at 6. Plaintiff alleges a number of permanent injuries "as a result of incompetent medical treatment rendered by orders of Roger Werholtz the Secretary of Confinement" at LCF, but he does not allege that this defendant caused such injuries.[4] Thus, plaintiff's allegations of constitutionally inadequate medical care boil down to a claim for delayed treatment – that defendant denied plaintiff a wheelchair for one day – which does not rise to the level of an Eighth Amendment violation. See Burkley v. Corr. Healthcare Mgmt. of Okla., 141 Fed. Appx. 714, 717 (10th Cir. 2005) (denying paraplegic a padded wheelchair for three days "not sufficiently serious to constitute deliberate indifference"); but see Rutherford v. Medical Dep't of Dep't of Corr., 76 Fed. Appx. 893, 902 (10th Cir. 2003) (inmate stated claim for deliberate indifference where medical

---

[4] Plaintiff alleges that "as a result of incompetent medical treatment rendered by orders of Roger Werholtz the Secretary of Confinement as punishment for the exercise of a constitutionally protected right," he "is incapable of walking distances of greater than a few feet, is incapable of standing or trying to walk without a great deal of physical pain," is "permanently incapable of driving any type of vehicle moterized [sic] or nonmoterized [sic]," and "[cannot] do any type of movement without severe pain and dizzyness and disorientation" Doc. #1 at 4. Plaintiff does not allege that Lewis caused these injuries, and the Court does not decide whether plaintiff's alleged injuries are sufficient to state an Eighth Amendment claim against KDOC or KDOC officials, all of whom remain defendants in this case.

staff disregarded complaints about severe pain, prescribed exercise and physical therapy that worsened condition without first performing tests or examination, delayed referring him to a doctor for medical care, allowed orders for referrals to expire, and failed to schedule prescribed tests, surgery and follow-up care).

The subjective component of the deliberate indifference standard requires that defendant knew of and disregarded an "excessive risk" to plaintiff's health or safety "by failing to take reasonable measures to abate it." Callahan, 471 F.3d at 1155; see also Riddle, 83 F.3d at 1202. Plaintiff asserts that defendant failed to give him a wheelchair, but acknowledges that Dr. Satchell prescribed him a wheelchair the following day. Doc. #1 at 6. Although plaintiff alleges that defendant did not perform any medical tests and stated that plaintiff's "inability to walk was not his problem," plaintiff does not allege an "excessive risk" to his health or safety and does not allege any injury resulting from defendant's treatment. Nor does plaintiff allege that the care which he ultimately received was constitutionally inadequate. Moreover, as to this defendant, the delayed treatment which plaintiff alleges does not involve a life-threatening situation or exacerbation of plaintiff's medical problems. See Hunt, 199 F.3d at 1224. Nor does plaintiff allege that this defendant acted under the color of state law. Therefore, plaintiff's complaint does not state a claim for constitutionally inadequate medical care under Section 1983 and defendant's motion to dismiss this claim is hereby sustained.

**II.     Americans with Disabilities Act Claim**

Plaintiff asserts that defendant violated his rights under the ADA by retaliating against him for filing an ADA claim against CCS and two CCS doctors and for opposing defendant's "discriminating behavior." Doc. #1 at 5.

Plaintiff's ADA claims are two-fold. First, plaintiff alleges that, in retaliation for plaintiff's

filing of an ADA claim against CCS and two CCS doctors, defendant discriminated against plaintiff by denying him medical treatment and a wheelchair, and stating that plaintiff was faking his disability. Id.[5] Second, plaintiff alleges that by pushing plaintiff into a wall defendant attempted to coerce him into not exercising his rights under the ADA. Id.[6] Defendant asserts that plaintiff fails to make out a prima facie case under Title II of the ADA because plaintiff did not allege that because of his disability he was denied participation in or denied the benefits of a public entity's services, programs, or activities. Doc. #23 at 11.

---

[5] Plaintiff's complaint states as follows:

14. I was seen by Nurse John Lewis who reviewed my file then commented about a civil rights claim I have against CCS and two CCS Doctors seeking money damages for injury caused by intentional discriminatory acts and practices that are unlawful under the Americans with Disabilities Act.

15. Without performing any medical test or procedures, John Lewis stated that my inability to walk is not his problem and stated that he will not give me a wheel-chair or medical treatment. Lewis further stated that he will excape [sic] liability by claiming I am faking disability then asked me how I felt about that.

23. Mike Medina and John Lewis began making claims, to other inmates and staff members, telling them that I am faking disability in an attempt to intimidate, coerce and/or interfer [sic] with my opposition against discriminating acts of the Defendant, by attempting to cause tention [sic], animosity, and derision towards me for vocing [sic] my opposition against discriminatory acts and practices of the Defendants.

Doc. #1 at 5-6.

[6] Plaintiff's complaint states as follows:

I then informed Lewis that it is unlawful to discriminate against me because of my law suit against CCS opposing discriminatory acts and practices. I further informed Lewis that I will file a separate claim against him and present this matter to the Judge. As I was trying to leave John Lewis attacked me from behind, throwing me into the office wall, because I opposed his discriminating behavior.

Doc. #1 at 5.

The ADA prohibits a person from "discriminat[ing] against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge" under the ADA. 42 U.S.C. § 12203(a). The ADA also makes it "unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of . . . any right granted or protected by" the ADA. 42 U.S.C. § 12203(b). To invoke this section, plaintiff must establish that he voiced opposition to an act made unlawful under the ADA, that the retaliation "produce[d] an injury or harm," and that a causal connection exists between plaintiff's protected act and the retaliation. See Hennagir v. Utah Dep't of Corr., 587 F.3d 1255, 1266 (10th Cir. 2009) (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 67-68 (2006)). An act or practice is unlawful under the ADA if (1) plaintiff is a qualified individual with a disability; (2) plaintiff was either excluded from participation in or denied the benefits of some public entity's services, programs or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits or discrimination was by reason of plaintiff's disability. See 42 U.S.C. § 12132; Gohier v. Enright, 186 F.3d 1216, 1219 (10th Cir.1999); Pahulu v. Univ. of Kan., 897 F. Supp. 1387, 1389 (D. Kan.1995).

Plaintiff's first retaliation claim alleges that defendant discriminated against him by denying him medical treatment and a wheelchair and stating that plaintiff was faking his disability. Doc. #1 at 5-6. Plaintiff asserts that defendant's discrimination was in retaliation for plaintiff filing an ADA claim against CCS and two CCS doctors. Id. at 5. To survive defendant's motion to dismiss, plaintiff must allege that he engaged in an act protected by the ADA, that defendant retaliated and caused plaintiff harm, and that a causal connection exists between plaintiff's protected act and defendant's retaliation. Here, plaintiff alleges that he filed an ADA claim against CCS and two CCS doctors, which is sufficient to trigger the ADA anti-retaliation statute. See 42 U.S.C. § 12203. By averring that defendant

commented on plaintiff's pending ADA claim, plaintiff also asserts a causal connection between his ADA claim and defendant's alleged retaliation. Plaintiff does not, however, allege that defendant's acts produced an injury or harm. Nor does plaintiff allege that he was "excluded from participation in or denied the benefits of some public entity's services, programs, or activities," which is required to state an ADA discrimination claim. 42 U.S.C. § 12203. Indeed, plaintiff states that he received the medical care and the wheelchair which he sought. Nor does plaintiff allege that defendant's statement regarding plaintiff faking his disability caused him any harm. Therefore, plaintiff's first retaliation claim fails to state a claim under the ADA. Defendant's motion to dismiss is sustained with respect to this claim.

Plaintiff's second retaliation claim likewise falls short. Plaintiff asserts that defendant, by pushing him into a wall, coerced him into not exercising his ADA rights.[7] Doc. #1 at 5-7. The ADA-protected right to which plaintiff refers appears to be his right to "oppose[ defendant's] discriminating behavior" (*i.e.*, defendant's act of denying plaintiff medical treatment, denying plaintiff a wheelchair and stating plaintiff was faking his disability). Id. To invoke the ADA's anti-retaliation provision, plaintiff must establish that he voiced opposition to an act made unlawful by the ADA. See Hennagir, 587 F.3d at 1266. Here, plaintiff alleges that he opposed defendant's denial of medical treatment, denial of a wheelchair and defendant's statement that plaintiff was faking his disability. Defendant's acts are unlawful under the ADA if plaintiff is a qualified individual with a disability, defendant denied plaintiff

---

[7] Plaintiff alleges that defendant "physically assault[ed]" him "in an attempt to coerce [plaintiff] into not exercising [his] rights under the ADA." Doc. #1 at 6. Plaintiff thus alleges that the "assault" was an act of retaliation under the ADA. Plaintiff does not allege that the "attack" violated his constitutional rights under the Eighth Amendment. Nor does plaintiff's complaint clearly allege a state law cause of action for assault. Even if it did, the Court would decline to exercise supplemental jurisdiction over such claim upon dismissing plaintiff's Section 1983 and ADA claims over which the Court had original jurisdiction. See 28 U.S.C. § 1367(c)(3); Lancaster v. Indep. Sch. Dist. No. 5, 149 F.3d 1228, 1236 (10th Cir. 1998).

the benefit of some public entity's services or programs, and that such denial was because of plaintiff's disability. See 42 U.S.C. § 12132. Here, plaintiff alleges (and defendant does not dispute) that for purposes of the ADA plaintiff is a qualified individual with a disability. Plaintiff does not allege, however, that he was denied the benefits or services of a public entity. A public entity is "any State or local government," "any department, agency, special purpose district, or other instrumentality of a State or States or local government" and certain commuter authorities such as the National Railroad Passenger Corporation. 42 U.S.C. § 12131(1). Even assuming that CCS is a "public entity" for purposes of the ADA, plaintiff does not allege that defendant denied him the benefit of CCS services. Rather, plaintiff's complaint admits that notwithstanding defendant's alleged discrimination, plaintiff received the medical attention which he sought: After defendant saw plaintiff in the clinic on April 23, 2009, Dr. Satchell prescribed plaintiff a wheelchair and a handicap accessible cell. Doc. #1 at 5. Because plaintiff does not allege that he was denied the benefits or services of a public entity, he does not state a retaliatory discrimination claim and fails to state a claim under the ADA. Therefore, defendant's motion to dismiss is granted with respect to plaintiff's second retaliation claim.

**IT IS THEREFORE ORDERED** that Defendant's Motion To Dismiss, Or In The Alternative, Motion For Summary Judgment And Memorandum In Support (Doc. #23) filed June 1, 2010 be and hereby is **SUSTAINED**.

Dated this 22nd day of September, 2010 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge